## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

American Defense Manufacturing, LLC

        Plaintiff,

    v.                                  Case No. _____

Visir Inc. d/b/a RIX Optics,

        Defendant,

## COMPLAINT

Plaintiff American Defense Manufacturing, LLC ("ADM"), for its complaint against defendant Visir Inc. d/b/a RIX Optics ("RIX"), alleges as follows:

### Parties

1.      Plaintiff ADM is a Wisconsin company with its principal place of business at 2525 S. 162nd St., New Berlin, WI 53151.  Among other things, ADM is engaged in the business of developing and selling firearms, mounts, and accessories.

2.      Defendant RIX is a Texas company with a principal place of business at 700 International Pkwy, Ste 102, Richardson, TX 75081.

### Nature of Action

3.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*., for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1051 *et seq*. and for trademark infringement and unfair competition under Texas common law.

4.    ADM is the owner of all right, title and interest in U.S. Patent 7,823,316 ("the '316 patent") entitled *Adjustable Gun Rail Lock,* issued on November 2, 2010, a copy of which is attached as Exhibit A.

5.    ADM is the owner of all right, title and interest in U.S. Patent 8,578,647 ("the '647 patent") entitled *Locking Quick Release Clamp Assembly,* issued on November 12, 2013, a copy of which is attached as Exhibit B.

6.    ADM is the owner of common law rights in and to the trademark "QD Auto Lock" for its patented auto lock system.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1338(a).

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a and b).

## BACKGROUND

9.    In and around 2007, the named inventors of the '316 and '647 patents, Troy Storch, John Gross, William Orene, III, and Eric Kincel, developed a novel quick locking and release assembly for securely mounting devices or accessories to firearms, vehicles, or other supporting structures.  This inventive quick locking and release mounting system allows a person to quickly attach and detach a mounting device or accessory to a supporting structure without tools. The mounting system is stable and reliable and does not jam even when subject to extreme conditions.

10.    For example, the mounting system allows a person to place an accessory on a firearm by simply sliding the mounting system on the rail and flipping its lever(s) to lock the accessory (e.g., a thermal imager) in place on a firearm. The accessory can then be removed from

the firearm simply by unlocking the mounting system and sliding it off the rail.   This allows for the easy and secure use of a user's personal accessories on multiple and third-party firearms.  For example, a person serving in the military might attach his or her personal thermal imaging scope on his or her government issued firearm.

11.    The inventors assigned their rights to the '316 patent to ADM between January 30, 2008 and February 7, 2008. ADM therefore owns all right and title to the '316 patent.

12.    The inventors assigned their rights to the '647 patent to ADM between September 28, 2010 and February 21, 2013. ADM therefore owns all right and title to the '647 patent.

13.    In and around December 2023, ADM began selling its mounting system containing the technology disclosed and claimed in the '316 and '647 patents to Rix under the trademark "QD Auto Lock."

14.    In and around March 2024, RIX stopped purchasing ADM's mounting system and began selling at least one mounting system, under the name "QD Auto Lock," (the "Accused Product") and manufactured (or had manufactured) mounts that infringe the '316 and '647 patents and ADM's trademark rights in "QD Auto Lock."

15.    On July 26, 2024, ADM's counsel sent a letter to RIX, informing RIX that it was infringing ADM's intellectual property rights. *See* Exhibit C.

16.    As such, as of at least July 26, 2024, RIX knew that it was infringing the '316 and '647 patents and the QD Auto Lock trademark.

17.    Despite this notification, RIX has continued to import, manufacture, offer to sell, and/or sell the Accused Product.

### COUNT I – PATENT INFRINGEMENT OF THE '316 PATENT

18.     ADM realleges and incorporates by reference the allegations in paragraphs 1 through 17 above.

19.     RIX knew ADM's mounting system was patented at least early as February 2024. This awareness can be seen on a screen capture of RIX's web page from February 4, 2024, in which RIX copied ADM's description of ADM's mounting system, including ADM's QD Auto Lock trademark and the accompanying "TM" designation but conspicuously omitted the "Patented" reference.  *See* below and Exhibits D and E, hereto.

ADM's webpage

   



## AD-RECON-S SCOPE MOUNT

The AD-RECON-S mount is made for putting high power glass onto a flattop style AR-10, Galil, Bolt Action Rifles, and Lever Action Rifles. This mount is best suited for the AR-10 platform or Bolt Action Rifles that are in a chassis system with a full length handguard covering the barrel. This mount will work with up to and including 56mm Objective Lenses. The AD-RECON-S is a straight up scope mount with no eye relief built in. It is precision machined from 6061 T6 aluminum and finished in hard coat T3 Mil-Spec anodize. It features the Patented QD Auto Lock(tm) Lever system to accommodate both in-spec and out-of-spec rail systems.



20.    RIX has willfully infringed the '316 patent through at least RIX's sale and offer for sale of the QD Mount alone or in conjunction with RIX's scope products including but not limited to the Storm series of scope products.

**Exemplary claim for the RIX QD Mount for the '316 patent**

21.    RIX has manufactured, sold, and/or offered to sell a product that infringes the '316 patent either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim 1 of the '316 patent (an independent claim) with RIX's accused mount (the "Accused Mount"), demonstrating infringement.

22.    Claim 1 of the '316 patent is directed to a mount that is placed on the rail of a firearm and is used for attaching an accessory.  Upon information and belief, the RIX Accused Mount is compatible with the Weaver and Picatinny rail systems, rail integration systems that

provide a mounting platform for firearm accessories.  The RIX Accused Mount may therefore be used to attach an accessory to a firearm.

23.    Claim 1 requires that the mount include a mounting structure that has a first wall.

24.    As shown in the image below, the RIX Accused Mount has a mounting structure which has a first wall.



25.    Claim 1 further requires a base which defines a cavity and second wall. The cavity receives the rail.

26.    As seen in the image above, the RIX Accused Mount has a base, cavity, and second wall. The cavity of the Accused Mount receives a rail of a firearm.

27.    Claim 1 also requires that the base be biased with respect to the first wall by at least one compressible member.

28.    As seen in the image below, the base of the RIX Accused Mount is biased with respect to the first wall by at least one compressible member (i.e., springs).



29.    Claim 1 requires that the mount have a yoke which couples the base to the first wall. The yoke extends through the first wall and further includes a cam member which has a notch on its surface.

30.    As seen in the image below, the RIX Accused Mount has a yoke which extends through the first wall. The yoke couples the base and first wall together. The yoke further has a cam member which has a notch on its surface.



31.    Claim 1 requires that a portion of the yoke is retained within a groove of the cavity.

32.    As seen in the image above, a portion of the RIX Accused Mount's yoke is retained within a groove of its cavity.

33.    Claim 1 further requires that the mounting structure include a nut for adjustably securing the yoke to the second wall.

34.    As seen in the image below, the RIX Accused Mount includes a nut. The adjustable nut secures the yoke to second wall.



35.     Claim 1 further requires that the mounting structure include a lever that is rotatably coupled to the cam member by a pin.

36.     As seen in the image below, the RIX Accused Mount has a lever. The lever is rotatably coupled to the cam member by a pin.



37.     Claim 1 requires that the lever be configured to rotate between a first position and a second position.

38.     As seen in the image below, the lever of the RIX Accused Mount rotates between a first and second positions.




39.     Claim 1 requires a button that is pivotably coupled to the lever and is configured to matingly cooperate with the notch of the cam to secure the lever. The lever is then secured with respect to the cam member when the lever is rotated to either a first position or a second position.

40.     As seen in the image below, the RIX Accused Mount has a button that is pivotably coupled to the lever. Its button and lever are coupled together through a pin thereby allowing the button to pivot. The button mates with the notch of the cam member to secure the lever with respect to the cam member when the lever is rotated to either the first and second position.



41.    Claim 1 requires that the button of the mounting structure be depressible relative to the lever. The depressible button allows the lever to rotate with respect to the cam member.

42.    As seen in the image below, the RIX Accused Mount includes a button that is depressible relative to the lever and allows the lever to rotate with respect to the cam member.





43.     RIX's QD Mount infringes claim 1 of the '316 patent either literally or under the doctrine of equivalents.

44.     The actions by RIX have caused and are causing irreparable harm and damage to ADM which actions are willful and with malice.

45.     ADM has no adequate remedy at law and is entitled to a preliminary and a permanent injunction enjoining RIX from further violation of ADM's rights.

## COUNT II – PATENT INFRINGEMENT OF THE '647 PATENT

46.     ADM realleges and incorporates by reference the allegations in paragraphs 1 through 45 above.

47.     RIX has been and is willfully infringing the '647 patent through at least its Accused Mount.

### Exemplary claim for the QD Mount for the '647 patent

48.     RIX has imported, manufactured, sold, and/or offered to sell its Accused Mount that infringes the '647 patent either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim 1 of the '647 patent (an independent claim) with the RIX Accused Mount, demonstrating infringement.

49.     Claim 1 of the '647 patent is directed to a system for mounting an accessory to a support structure.  The RIX Accused Mount is a system for mounting an accessory to a support structure.  For example, the RIX Accused Mount may be used to mount a thermal imager to a firearm.

50.     Claim 1 requires that the system include a shaft with a longitudinal axis. The shaft further includes a head portion formed at the end of the shaft.

51.    As seen in the image below, the RIX Accused Mount includes a shaft with a head portion at one end. The shaft has a longitudinal axis.



52.    Claim 1 requires that the system include a lever that is connected to the head portion of the shaft by a pin. The pin extends through the head portion in such a way that the exterior surface of the head portion of the shaft remains exposed.

53.    As seen in the image below, the RIX Accused Mount has a lever connected to the head portion of the shaft by a pin that extends through the head portion such that the head portion remains exposed.



54.     Claim 1 requires that the lever be rotatable about an axis that is oriented in a crossing direction relative to the longitudinal axis of the shaft.

55.     As seen in the image below, the RIX Accused Mount has a lever that rotates about an axis oriented in a crossing direction relative to the longitudinal axis of the shaft.



56.    Claim 1 requires the system include a notch that is located in the exterior surface of the head portion.

57.    As seen below, the RIX Accused Mount has a notch located in the exterior surface of the head portion.



58.    Claim 1 requires that the system include a lock that is pivotably attached to the lever and positioned to selectively interact with the notch formed in the exterior surface of the head portion.  The lock prevents the rotation of the lever relative to the shaft when the lock is engaged with the notch.

59.    As seen in the image below, the RIX Accused Mount includes a lock. The lock is pivotably attached to the lever and selectively interacts with the notch formed in the exterior surface of the head portion thereby preventing the rotation of the lever relative to the shaft when the lock is engaged with the notch.



60.     RIX's Accused Mount infringes claim 1 of the '647 patent either literally or under the doctrine of equivalents.

61.     The actions by RIX have caused and are causing irreparable harm and damage to ADM which actions are willful and with malice.

62.     ADM has no adequate remedy at law and is entitled to a preliminary and a permanent injunction enjoining RIX from further violation of ADM's rights.

## COUNT III – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER TEXAS COMMON LAW

63.     ADM realleges and incorporates by reference the allegations in paragraphs 1 through 62 above.

64.     RIX has engaged in "passing off" its product as ADM's in that RIX copied the appearance and description of ADM's mounting system, used ADM's QD Auto Lock trademark, and used the same Amazon listing previously used to sell ADM's mounting system, but instead supplied, sold, and shipped its mount to ADM's customers, thereby damaging and harming ADM and the public. *See* Exhibits D and E.

65.    RIX has deliberately copied the appearance and trademark of ADM's mount system, copied RIX's content and imagery in RIX's advertisement, promotion, marketing material, and Accused Product in a manner that is likely to cause confusion as to the source or sponsorship of RIX's offerings.

66.    Upon information and belief, RIX has deliberately copied the description of ADM's patented mount system into RIX's advertisement, promotion, and/or marketing materials without ADM's authorization in a manner that is likely to cause confusion as to the source or sponsorship of RIX's offerings.

67.    RIX has used ADM's QD Auto Lock trademark without authorization, thereby infringing ADM's rights.

68.    Upon information and belief, RIX previously sold ADM's mounting system on Amazon.

69.    Upon information and belief, RIX stopped selling ADM's mounting system and started selling its own mounting system under the infringing "QD Auto Lock" name using the same Amazon listing.

70.    Upon information and belief, RIX did not notify potential customers or customers that the Amazon listing was for its mount rather than ADM's QD mount thereby infringing ADM's QD Auto Lock trademark and materially mispresenting the source or sponsorship of the mount.

71.    RIX's unauthorized use of ADM's QD Auto Lock trademark, copying of the description and appearance of ADM's mounting system, as well as RIX's use of its pre-existing Amazon listing materially misrepresents the source or sponsorship of its mounting system and constitutes trademark infringement and unfair competition under Texas Common Law.

72.    The actions by RIX have caused and are causing irreparable harm and damage to ADM which actions are willful and with malice.

73.    ADM has no adequate remedy at law and is entitled to a preliminary and a permanent injunction enjoining RIX from further violation of ADM's rights.

## COUNT IV – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT

### (15 U.S.C. §1051(a))

74.    ADM realleges and incorporates by reference the allegations in paragraphs 1 through 73 above.

75.    RIX has engaged in "passing off" its product as ADM's in that RIX copied the appearance and description of ADM's mounting system, used ADM's QD Auto Lock trademark, and used the same Amazon listing previously used to sell ADM's mounting system, but instead supplied, sold, and shipped its mount to ADM's customers, thereby damaging and harming ADM and the public. *See* Exhibits D and E.

76.    RIX has deliberately copied the appearance and trademark of ADM's mount system, copied RIX's content and imagery in RIX's advertisement, promotion, marketing material, and Accused Product in a manner that is likely to cause confusion as to the source or sponsorship of RIX's offerings.

77.    Upon information and belief, RIX has deliberately copied the description of ADM's patented mount system into RIX's advertisement, promotion, and/or marketing materials without ADM's authorization in a manner that is likely to cause confusion as to the source or sponsorship of RIX's offerings.

78.    RIX has used ADM's QD Auto Lock trademark without authorization, thereby infringing ADM's rights.

79.     Upon information and belief, RIX previously sold ADM's mounting system on Amazon.

80.     Upon information and belief, RIX stopped selling ADM's mounting system and started selling its own mounting system under the infringing "QD Auto Lock" name using the same Amazon listing.

81.     Upon information and belief, RIX did not notify potential customers or customers that the Amazon listing was for its mount rather than ADM's QD mount thereby infringing ADM's QD Auto Lock trademark and materially mispresenting the source or sponsorship of the mount.

82.     RIX's unauthorized copying of the description and appearance of ADM's mounting system, as well as RIX's use of its previous Amazon listing materially misrepresents the source or sponsorship of its mounting system.

83.     RIX's unauthorized use of ADM's QD Auto Lock trademark, copying of the description and appearance of ADM's mounting system, as well as RIX's use of its pre-existing Amazon listing materially misrepresents the source or sponsorship of its mounting system and constitutes trademark infringement and unfair competition under Section 43(a) of the Lanham Act.

84.     The actions by RIX have caused and are causing irreparable harm and damage to ADM which actions are willful and with malice.

85.     ADM has no adequate remedy at law and is entitled to a preliminary and a permanent injunction enjoining RIX from further violation of ADM's rights.

## SUMMARY

86.    RIX has directly infringed the '316 and '647 patents making, selling, and/or offering to sell the Accused Mount.

87.    RIX was aware of the '316 and '647 patents prior to the filing of this lawsuit.

88.    Upon information and belief, RIX knew that the use of the Accused Mount would infringe the '316 and '647 patents.

89.    Upon information and belief, RIX has been and is willfully infringing the '316 and '647 patents.

90.    RIX will continue to manufacture, sell, and/or offer for sale the Accused Mount unless enjoined from doing so, causing ADM irreparable harm.

91.    RIX's conduct shows a lack of the required duty to avoid infringement of the '316 and '647 patents such that this is an exceptional case; therefore, ADM should be awarded its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

92.    Pursuant to 35 U.S.C. § 284, ADM is entitled to enhanced damages for RIX willful infringement of the '316 and '647 patents, up to treble damages.

93.    Pursuant to 35 U.S.C. § 283, ADM is entitled to a preliminary and permanent injunction against further infringement of the '316 and '647 patents by RIX.

94.    RIX has deliberately and willfully materially misrepresented the source of its mounting system.

95.    RIX's false and misleading acts and infringing activity have and will continue to cause irreparable and monetary harm to ADM unless enjoined.

**Request for Relief**

WHEREFORE, Plaintiff American Defense Manufacturing, LLC demands that judgment be entered in its favor and against Defendant Visir Inc. as follows:

A.    Adjudging that RIX has infringed the '316 and '647 patents;

B.    Adjudging that RIX's patent infringement is and has been willful;

C.    Adjudging that RIX has unfairly competed with ADM under both Texas and federal law;

D.    Adjudging that RIX has willfully infringed ADM's QD Auto Lock trademark under Texas and federal law;

E.    Preliminarily and permanently enjoining RIX and all those in active concert therewith, from infringing the '316 and '647 patents;

F.    Preliminarily and permanently enjoining RIX and all those in active concert therewith, from unfairly competing with ADM;

G.    Preliminarily and permanently enjoining RIX and all those in active concert therewith, from infringing ADM's QD trademark and using any confusingly similar trademarks;

H.    Awarding ADM its actual and statutory damages, multiples thereof, together with prejudgment interest, caused by RIX's patent and trademark infringement and unfair competition;

I.    Awarding ADM punitive damages, attorneys fees and costs; and

J.    Granting such other and further relief as the Court may deem appropriate.

## Jury Demand

Plaintiff American Defense Manufacturing, LLC hereby demands a jury trial of all issues of fact not admitted by the Defendant.

Dated:  September 8, 2025

/s/*Adam L. Brokman*
Michael T. Griggs
Adam L. Brookman
Marriam Lin
BOYLE FREDRICKSON, S.C.
840 N. Plankinton Ave.
Milwaukee, WI  53203
Telephone:  414-225-9755
Facsimile:  414-225-9753

/s/ *Greg Love*
Greg Love (SBN 24013060
Hon. Paul D. Stickney (Ret.)(SBN 00789924)
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
greg@stecklerlaw.com
judgestickney@stecklerlaw.com

Attorneys for Plaintiff American Defense Manufacturing, LLC